UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JEFFREY R. KLEIN,

        Plaintiff,

  -against-

OCTAGON INC., *et al.*,

        Defendants.

No. 14-cv-6770 (AT)

**DECLARATION OF BRIAN SMITH**

---

BRIAN SMITH declares:

1. I am Vice President, Human Resources, in the Marketing Americas Division of Octagon, Inc. ("Octagon"). I make this Declaration to the best of my knowledge, information, and belief in support of Octagon's opposition to Plaintiff's Motion for Court Authorized Notice Pursuant to 29 U.S.C. § 216(b).

2. Marketing Americas is primarily located in Norwalk, Connecticut.

3. Marketing Americas has two primary divisions: Consulting, which handles corporate sponsorship campaigns, and Events, which focuses on sponsorships of large-scale events such as professional golf tournaments. Several other departments support these two divisions: Merchandise, which handles procurement and analysis for corporate giveaway items at events; Research, which conducts analysis of fan behavior and preferences for sporting events; "id8," an internal "think tank"; Digital, which provides creative, strategic and technical development of digital products and services stemming from research-based indexing; "Access," which helps leading global brands leverage sports, entertainment and lifestyle marketing to effectively reach multicultural and millennial consumers; and "Frukt" (Music), which creates and develops strategic partnerships in the music and entertainment fields.

4. Marketing Americas offered internship opportunities in these departments over the summer and during the college semesters. Since 2011 (the time period applicable to the current Motion), Marketing Americas has sponsored interns in its offices in Atlanta, Charlotte, Los Angeles, New York City, and Norwalk, CT.

5. Marketing Americas publicized its internship opportunities by posting information on the Octagon website or on college and university databases. Resumes of prospective interns were circulated to applicable business executives within Marketing Americas based on the interns' desires and interns, and these executives independently chose whom to contact.

6. Although the Human Resources department of Marketing Americas assisted with the recruitment of interns, it was not involved in overseeing or coordinating the day-to-day experiences of the interns. Those experiences varied based on the different "shadowing" or other opportunities made available by his or her assigned liaison within the applicable department. Only those liaisons and the interns themselves could accurately describe each intern's individual experience at Marketing Americas.

7. School year interns were undergraduate or graduate students, and did not have a standard schedule. During the summer months, some interns were present at the Marketing Americas offices Monday through Friday because they were not in class during the summer or because of their academic credit requirements. Other summer interns were present for only a few days per week depending on their availability and the scope of their internship.

8. Interns were informed that academic credit was offered as part of their internship, but I do not know if every intern applied for or received credit through their school. In order to

receive credit, some colleges required interns to take a class or write a paper in conjunction with their internship, while some colleges had no specific requirements.

9.   I am aware that Octagon's other division, Talent & Properties ("T&P"), also made internships available to college students. To my knowledge, no one at Marketing Americas was involved in administering internships at T&P, nor was anyone at T&P involved in administering internships at Marketing Americas.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, that the foregoing is true and correct.

Executed on November 25, 2014

Brian Smith